Alice Fisher Foster, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 10126.  Promulgated August 22, 1927.

For the purpose of computing gain or loss upon the sale of stock acquired by petitioner as a residuary legatee under a will, said stock *held* to have been acquired at date of distribution and not at date of death of decedent.

*R. H. Hart, Esq.*, for the petitioner.
*A. G. Bouchard, Esq.*, for the respondent.

This is an appeal from the determination by the Commissioner of a deficiency of $4,201.33 in income tax for the calendar year 1919, resulting from the inclusion in taxable income of an alleged gain derived from the sale of stock acquired by the taxpayer as one of the residuary legatees under the will of her father. The taxpayer assigns four errors, which are resolved into two issues: (1) Did the taxpayer *acquire* the stock at testator's death or at the date of distribution by the executors of the estate, and (2) was the exchange by the executors, during administration of the estate, of certain preferred stock in a corporation, which was the stock testator owned at his death, for common stock upon the reorganization of the corporation, which was the stock distributed to and sold by the taxpayer, a taxable transaction to the estate, so that the value of the new stock at the date of the exchange is the basis for determining gain or loss upon the sale of that stock by the taxpayer? The issues raised are alternative, for if the taxpayer prevails upon the first a decision of the second becomes unnecessary. The facts in the case were stipulated.

Petitioner is an individual, a citizen and resident of the United States and of the State of Colorado. She is the daughter of Lucius G. Fisher, deceased, and is one of the four children named in his will.

Lucius G. Fisher, a citizen and resident of Illinois, died on March 20, 1916, leaving a last will and testament, which was admitted to probate in the Probate Court of Cook County, Illinois, on April 17, 1916. On the same day the executors named therein qualified and letters testamentary were issued to them. So much of the will as is pertinent to this appeal, reads:

> Fourth: I give and bequeath all the rest, residue and remainder of my personal estate (with the exception of my shares of stock in the Rio Mimbres Company of New Mexico) to my four children, in equal shares, subject, however, to the trusts hereinafter set forth in regard to the share of my daughter Ethel, and also subject to the proviso that in making division of my personal estate into shares as aforesaid, each of my children shall be charged with any advancement which I may have made to them respectively during my lifetime, and that my daughter Alice shall also be charged in such division with the devise to her in the Third Article of this will at the original cost thereof to me.

The devise mentioned as in the third article is a devise of real estate in Denver, Colo. All of the stock hereafter referred to was disposed of by the residuary clause of the will.

At the time of his death the testator owned 4,361 shares of the 7 per cent cumulative preferred stock of the Union Bag & Paper Co., a New Jersey corporation. Pursuant to an agreement of consolidation entered into August 22, 1916, between the Union Company and the Riegel Bag & Paper Co., a New Jersey corporation, the two companies were merged and consolidated into a new corporation known as Union Bag & Paper Corporation, effective October 4, 1916. Under the plan of consolidation the executors of the estate received 8 shares of new common stock in the Union Corporation in exchange for 11 shares of old preferred stock in the Union Company. As a partial distribution to the residuary legatees, the executors distributed 791 shares of new common stock in the Union Corporation received in exchange for 1,090 shares of preferred stock of Union Company to the petitioner, who received the same on November 20, 1916. The petitioner sold the 791 shares of new common stock during 1919 for $62,601.21, its fair market value on the dates of sale.

In accordance with the consolidation agreement entered into on August 22, 1916, and approved by the two-thirds vote of the outstanding stock of each company, the Union Bag & Paper Co. and the Riegel Bag & Paper Co. were merged, effective October 4, 1916, as the Union Bag & Paper Corporation. Prior to the merger the

Union Company owned no interest and no stock in the Riegel Company. By the terms of the consolidation the corporate existence of the constituent companies was terminated and all the rights, privileges, powers and franchises, together with all property, real, personal and mixed, tangible or intangible, and choses in action or possession, became vested in and the property of the Union Corporation, and all debts, duties, and obligations of the constituent companies were assumed by, became attached to, and enforceable against the Union Corporation. The property of the Riegel Company, consisting of cash, accounts receivable, merchandise and good will, in excess of its liabilities was worth approximately $100,000, and its indebtedness, consisting of accounts and bills payable, was $73,893.25, which was liquidated after the merger in the ordinary course of business. The capital stock of the Riegel Company consisted of 1,000 shares of the par value of $100 each.

Prior to the merger the capital stock of the Union Company consisted of $16,000,000 in common stock and $11,000,000 in 7 per cent cumulative preferred stock. The bonded indebtedness consisted of $3,284,000 first mortgage 5 per cent gold bonds and $180,000 in mortgages on properties acquired. The property of the Union Company consisted of mills, factories, water powers, woodlands, good will, stock of the St. Maurice Paper Company, Ltd., and current assets as follows:

| | |
|---|---|
| Mills, factories, woodlands, mill sites and power plants_____ | $6,700,000.00 |
| Stock of St. Maurice Paper Co., Ltd_____ | 3,750,000.00 |
| Current assets as of January 31, 1916, less current liabilities_____ | 1,599,314.30 |
| Patents, processes, good will, contracts, etc_____ | 1,750,000.00 |
| | 13,799,314.30 |

The net profits for the five fiscal years preceding January 31, 1916, were:

| | |
|---|---|
| 1912_____ | $617,750 |
| 1913_____ | 92,464 |
| 1914_____ | 117,830 |
| 1915_____ | 414,284 |
| 1916 (deficit)_____ | 70,679 |

No dividends had been paid on the common stock and the unpaid cumulative dividends on the preferred stock at the close of business January 31, 1916, amounted to 41½ per cent. Working capital had been seriously impaired, credit of the company was restricted and properties needed to be rehabilitated. A readjustment of capitalization was necessary.

The Union Corporation was capitalized at $10,000,000 all in common stock. The stock of the Riegel Company was retired for cash,

the stockholders being paid $100 per share, together with an amount equal to 6 per cent thereon from August 18, 1916, and $11,000,000 of the preferred stock of the Union Company was exchanged for the $8,000,000 common stock of the Union Corporation, the stockholders securing 8 shares of new common for 11 shares of old preferred stock. Sixteen million dollars of the common stock of the Union Company was exchanged for the $2,000,000 of the common stock of the Union Corporation, the stockholders receiving 1 share of new common for 8 shares of old common stock. The control of the company thus passed from the holders of the old common stock to the holders of the old preferred stock of the Union Company. The condensed balance sheet of the Union Corporation as of January 31, 1917, shows assets and liabilities as follows:

### ASSETS

| | | |
|---|---|---|
| Capital assets: | | |
| Properties, including operating plants, water power, timber rights, and real estate | | $9,130,435.65 |
| Capital stock of St. Maurice Paper Co., Ltd. (37.500 shares of a total 50,000 shares) | | 3,750,000.00 |
| | | 12,880,435.65 |
| Current assets: | | |
| Inventories (at or below cost)— | | |
| Pulpwood in rivers and piles | $379,650.98 | |
| Supplies, stores, fuel, etc | 319,360.92 | |
| Merchandise on hand and in process | 972,977.61 | |
| | 1,671,989.51 | |
| Accounts receivable | 1,358,561.19 | |
| Cash on hand and in banks | 484,591.68 | |
| | | 3,515,142.38 |
| Deferred charges: Prepaid insurance premiums, etc | | 34,805.28 |
| | | 16,430,383.31 |

### LIABILITIES

| | | |
|---|---|---|
| Capital stock—100,000 shares at $100 each | | 10,000,000.00 |
| Funded debt—bonds outstanding | | 4,256,000.00 |
| Purchase money obligations | | 50,000.00 |
| Current liabilities: | | |
| Accounts payable | $660,199.59 | |
| Interest accrued on bonds | 31,391.66 | |
| Dividend payable February 15, 1917 | 200,000.00 | |
| | | 891,591.25 |
| Surplus | | 1,232,792.06 |
| | | 16,430,383.31 |

The net earnings of the corporation for the year from February 1, 1916, to January 31, 1917, amounted to $2,832,277.24, from which various charges were deducted, resulting in the surplus shown in the above statement. The corporation paid a dividend of 1½ per cent on its stock on December 15, 1916, and on January 24, 1917, declared an extra dividend of 2 per cent, payable February 15, 1917.

The fair market value of 1,090 shares of the old preferred stock of the Union Company at the date of testator's death was $38,066.87, on October 4, 1916, $63,628.75, and on November 20, 1916, $95,238.75. The fair market value of 791 shares of the new common stock of the Union Corporation was $96,798.62 on November 20, 1916.

The respondent decided that the cost to the petitioner of the 791 shares of new common stock in the Union Corporation was the value of the 1,090 shares of old preferred stock in the Union Company, which had been exchanged therefor, at the date of testator's death, $38,066.87, and deducting that value from $62,601.21, the amount received by petitioner upon the sale of the 791 shares in 1919, determined a profit of $24,534.34 derived from such sale, resulting in the deficiency here involved. The petitioner in her income-tax return for the year 1919 claimed a loss of $34,197.41 sustained upon said sale.

### OPINION.

VAN FOSSAN: The fundamental question for determination in this appeal is when was the stock *acquired* by the petitioner. Section 202(a)(2) of the Revenue Act of 1918 provides that the basis for ascertaining the gain derived or loss sustained from the sale or other disposition of property acquired after March 1, 1913, shall be the cost thereof to the taxpayer. In this case the petitioner received the stock as a residuary legatee under a will and the cost to her is the fair market value thereof at the date she acquired it. The value of this stock at each of the various dates material to the present inquiry is set forth in the findings of fact and we need only to decide the date upon which it was acquired by the petitioner.

This question has been heretofore exhaustively considered in a case strikingly parallel to the present appeal. The domicile of the decedents, the capacity in which the taxpayers acquired the property in controversy (residuary legatees), the nature of the property (shares of stock) forming the subject matter of the transaction giving rise to the controversy, and the revenue act involved, are the same in each case. In that case we held that the date on which the taxpayer *acquired* the stock was the date of its actual distribution to him and not the date of the death of the testator, and that " any amount representing an increase in the value of the stock between the

date of the death of the testator and the date of such distribution should not be included in the income of the taxpayer." *Appeal of F. W. Matthiessen, Jr.,* 2 B. T. A. 921.

The respondent, in determining the deficiency, held that the petitioner acquired this stock at the date of testator's death and that the value thereof at that time is the cost upon which to base the determination of gain or loss resulting from the sale thereof. This is the same position urged in the *Matthiessen* appeal. No argument or authority has been advanced by the respondent in this case in support of his action that was not considered in the *Matthiessen* appeal, and we see no reason for altering our views expressed therein. Upon the authority of that case we conclude that the respondent erred in determining the deficiency in this appeal.

In view of our conclusions upon the first issue, it is unnecessary to consider the second or alternative issue raised.

The determination of the respondent is disapproved.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by MARQUETTE, MILLIKEN, and PHILLIPS.